1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  JAMES RICHARD WOOD,              )   Civil No. 10-1095-MMA(WVG)
                                     )
12               Petitioner,         )   REPORT AND RECOMMENDATION
                                     )   DENYING PETITION FOR WRIT
13  v.                               )   OF HABEAS CORPUS
                                     )
14  WILLIAM B. KOLENDER, San Diego   )
    County Sheriff,                  )
15                                   )
                 Respondent.         )
16                                   )
    _____

17

18       I.   <u>INTRODUCTION</u>

19       Petitioner, James Richard Wood (hereafter "Petitioner"), a

20  state prisoner proceeding with counsel, has filed a Petition for

21  Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (hereafter

22  "Petition") challenging his conviction for one count of attempting

23  to dissuade a witness. (Respondent's Lodgment No. 1 at 341.)

24  Petitioner contends that habeas relief is proper based on the

25  following five grounds: (1) the court's refusal to allow photographs

26  into evidence at trial violated his right to due process; (2) his

27  trial counsel's failure to introduce a nanny cam video into evidence

28  violated his right to effective assistance of counsel; (3) his trial

1    counsel's failure to introduce testimony of character and conduct

2    witnesses violated his right to effective assistance of counsel; (4)

3    Cal. Penal Code Section 136.1(b)(1)[1/] is either constitutionally

4    flawed or the trial court's instruction was error, and his trial

5    counsel's failure to request an appropriate jury instruction

6    violated his right to effective assistance of counsel; and (5) his

7    due process rights were violated based on insufficient evidence to

8    support a violation of Section 136.1(b)(1). (Petition at 2.)

9          This Court has reviewed the Petition, Respondent's Answer,

10   Petitioner's Traverse, and all supporting documents submitted by the

11   parties.  Based on the documents and evidence presented, and for the

12   reasons set forth below, this Court finds that Petitioner is not

13   entitled to the relief requested and RECOMMENDS that the Petition be

14   DENIED.

15        II.   <u>FACTUAL BACKGROUND</u>

16        This Court gives deference to state court findings of fact

17   and presumes them to be correct.  <u>See</u> 28 U.S.C. § 2254(e)(1); <u>see</u>

18   <u>also</u> <u>Parke v. Raley</u>, 506 U.S. 20, 35-36 (1992) (holding findings of

19   historical fact, including inferences properly drawn from such

20   facts, are entitled to statutory presumption of correctness).  The

21   facts as found by the state appellate court are substantially set

22   forth below: (<u>See</u> Respondent's Lodgment No. 7 at 4-8.)

23        In late October 2006, Christina H. drove to Petitioner's Del

24   Mar Heights home, which was also his photography studio.  Christina

25   was not a professional model and she had never been involved in

26   pornography, but she had responded by email to an online advertise-

27

28   [1/]   All further references are to the California Penal Code, unless
         otherwise specified.

2

10cv1095

1   ment on Craigslist that offered a "free photo shoot for a sexy

2   calendar."   Feeling like she was auditioning, Christina emailed

3   Petitioner in response to his advertisement, and she attached some

4   sexy photographs of herself that had been taken by a friend.

5   Petitioner responded with an email offering Christina the opportu-

6   nity to participate in a three-hour photo shoot at his home.

7   Christina then hired Petitioner to take photographs of her in

8   sexually suggestive and sometimes nude poses for a calendar for her

9   boyfriend.   Petitioner instructed Christina to come to the photo

10  shoot alone.

11      When Christina arrived at Petitioner's home for the photo

12  shoot, he provided her a written contract that explained that

13  Christina would receive the promised calendar and a disk containing

14  500 photographic images, but Petitioner would have the rights to all

15  of the photographs.   Christina signed the contract.

16      During the photo shoot, Christina followed Petitioner's

17  instructions and began taking off her clothes.   She was nude almost

18  right away.   Although she was naked and spreading her legs in many

19  of the photographs, Christina never placed anything into her vagina

20  or engaged in masturbation.   She said that she trusted Petitioner,

21  and denied that any "chemistry" existed between them.

22      Toward the beginning of the photo shoot, Petitioner asked

23  Christina, "Does the photographer get some of that?"   Christina

24  testified that she might have responded with a "funny face."   She

25  did not know whether Petitioner was serious, and she testified that

26  she assumed he was joking.

27      Later on in the photo shoot, as she was lying on her back on

28  a couch with her legs raised and vagina exposed, Petitioner

10cv1095

1   approached Christina and began adjusting her legs.  Without saying

2   anything, he opened her legs and began to lick her vagina.

3   Christina testified that she was shocked and she froze.  She

4   indicated that she had not said anything that would have given

5   Petitioner permission to lick her vagina.

6        After trying to think of something to say, Christina told

7   Petitioner, "I'm just here for the photos."  Petitioner started

8   licking her again, and she said a second time, "I'm just here for

9   the photos."  When she repeated this statement a third time, he

10  finally stopped.  Christina testified that she felt scared because

11  Petitioner had crossed a boundary, and she did not know what he was

12  capable of doing.  She did not know whether he would try to hurt or

13  stop her if she just left, so she felt that the best thing to do was

14  to act calm.   When Petitioner stopped licking her, Christina

15  continued to smile and pose naked for photographs.  She testified

16  that she wanted to get out of Petitioner's house safely, so she did

17  not want to make it seem like something was wrong.

18       Christina also testified that when the photo shoot was over

19  and she got into her car, she called her sister, best friend, and

20  boyfriend.  She was hysterical when she spoke with her sister,

21  crying and "freaking out because of how [Petitioner] had licked"

22  her.  She was not sure whether she should call the police, but she

23  did want to call them because she felt extremely violated.  When

24  shown her cell phone bill during her testimony, Christina identified

25  the phone calls that she had made to her sister, best friend, and

26  boyfriend that afternoon.  After speaking to all of them, she called

27  the police.  Christina's boyfriend testified that she called him at

28

4

10cv1095

1  around 4:40 p.m. that day.  She was crying and told him that she had

2  gone to get a calendar made and had been assaulted.

3      The police came to Christina's apartment and took her

4  statement.  She was then taken to a medical facility where she

5  underwent a Sexual Assault Response Team (SART) examination, and her

6  vagina was swabbed for DNA.

7      In late November 2006, San Diego Police Department Detective

8  Richard Metz contacted Petitioner by telephone, identified himself,

9  and said that he was calling about a complaint that Christina had

10  filed with the San Diego Police Department.  This conversation was

11  recorded and played for the jury at trial and the transcript of the

12  recorded conversation was admitted into evidence.  During the phone

13  conversation with Detective Metz, Petitioner denied touching

14  Christina in an inappropriate way.  When asked whether he "kiss[ed]"

15  Christina's vagina, Petitioner said no, and he accused Christina of

16  "just making stuff up."  When Detective Metz asked Petitioner

17  whether he was saying that Christina's allegation that he "had gone

18  down on her" while he was posing her was "absolutely not true,"

19  Petitioner said yes.  Detective Metz asked Petitioner if he was

20  willing to give a consensual mouth swab.  Petitioner responded that

21  he thought it was an invasion of privacy "based upon somebody's

22  false accusations."

23      At trial, Detective Metz testified that Petitioner denied

24  Christina's allegations, and he also denied that he orally copulated

25  her.  Although Petitioner initially did not want to voluntarily

26  provide a DNA mouth swab, he eventually did provide one.  By means

27  of a stipulation, the jury was informed that Petitioner could not be

28

10cv1095

1   excluded as a possible contributor to the low level non-sperm DNA
2   found on Christina's vagina.

3        On January 9, 2007, Christina received an email from
4   Petitioner, warning her that it was a crime to file a false police
5   report.   Petitioner's email also said that Christina would "be
6   facing a very costly civil suit" from him if she continued her
7   criminal claims against him.   He wrote that she should instruct
8   Detective Metz to "back off" if she wanted to keep her graphic
9   photographs private.   Christina testified that she felt threatened
10  after she received that email.   She contacted Detective Metz after
11  receiving the email from Petitioner.

12       On January 10, 2007, Detective Metz arranged a recorded
13  telephone call from Christina to Petitioner.   A recording of the
14  conversation was played for the jury, and the transcript was
15  admitted into evidence.   During the call, Petitioner told Christina
16  that he "didn't do anything that [she] didn't consent to."   He also
17  said that her "masturbating in front of [him]" was "basically
18  consent."   When Christina replied that she was posing, not mastur-
19  bating, Petitioner said to her "[Your] hands are there.   You've got
20  objects down there.   You've got bananas.   You've got all kinds of
21  stuff."   Christina said that she was posing with props and trying to
22  look sexy.   She also told Petitioner that she was upset about him
23  licking her.   Petitioner then told her that "it needs to go away
24  before it gets ugly," and "if I meet with my attorney today is when
25  it starts to get ugly."   Petitioner continued, "You have to tell the
26  detective that you . . . rethought this," and "you just need to . .
27  . convince him that you were . . . overreacting or however you want
28  to put it."   Petitioner stated, "[I]t needs to go away. . . unless

10cv1095

1   you want this to turn into a nightmare."   When Petitioner told

2   Christina that she didn't say stop and didn't close her legs when he

3   began licking her vagina, Christina replied that she did freeze.

4   She acknowledged that Petitioner did not force her, but she said

5   "[y]ou just did it without my permission."

6        During cross-examination at Petitioner's trial, defense

7   counsel presented a series of photographs that were taken before the

8   licking incident occurred.   Over 800 photographs were admitted into

9   evidence in the form of a slide show, along with 10 additional still

10  photographs.   Christina agreed that some of the images depicted her

11  touching her private parts, posing with a banana, and permitting

12  Petitioner to position her legs.

13       Christina testified that after the oral copulation incident,

14  she was in "survival mode."   She said that she wanted to leave, but

15  admitted that she continued participating in the photo shoot for at

16  least one-and-a-half hours after the incident.   Defense counsel

17  showed Christina photographs (exhibits that were later admitted into

18  evidence) that depicted her wearing different outfits, and she

19  acknowledged that one photograph showed her smiling while wearing a

20  purple bodice.   The purple bodice was the outfit that she wore

21  immediately after the licking incident occurred.   Christina also

22  acknowledged that she was smiling in several of the other photo-

23  graphs, and that the photographs captured her demeanor.

24       III.  PROCEDURAL BACKGROUND

25       In San Diego Superior Court case number SCD205782, a jury

26  found Petitioner guilty of one count of sexual battery (Cal. Penal

27  Code § 243.4(e)(1)) (count one), and one count of attempting to

28  dissuade a witness (Cal. Penal Code § 136.1(b)(1)) (count two).

10cv1095

(Respondent's Lodgment No. 1 at 341.)   The trial court sentenced Petitioner to a term of 120 days in custody, along with 3 years of probation with the requirement of registration under Section 290.[2/] (Respondent's Lodgment No. 3 at 16.)

Petitioner appealed to the California Court of Appeal, Fourth Appellate District, Division One, in case number D054112. (Respondent's Lodgment Nos. 3, 4, 5.)  On December 17, 2009, the Court of Appeal reversed the judgment for sexual battery (count one), and affirmed the judgment for attempting to dissuade a witness (count two), in an unpublished opinion.  (Respondent's Lodgment No. 7.)

On May 27, 2009, Petitioner filed a Petition for Writ of Habeas Corpus in the California Court of Appeal, Fourth Appellate District, Division One. (California Court of Appeal, Docket, Case Number D055201, http://appellatecases.courtinfo.ca.gov/ search/case/dockets.cfm?dist=4.)  On December 17, 2009, the Court of Appeal denied the Petition in an opinion consolidated with Petitioner's appeal.[3/] (California Court of Appeal, Docket, Case Number D055201, http://appellatecases.courtinfo.ca.gov/search/ case/dockets.cfm?dist=4.) Petitioner filed a Petition for Review in the California Supreme Court in case number SCD205782.  (Respondent's Lodgment No. 8.)  On March 30, 2010, the California Supreme Court denied the Petition without comment.  (Respondent's Lodgment No. 9.)

---

[2/]     Cal. Penal Code Section 290, subdivision (a) reads:  "Sections 290 to 290.023, inclusive, shall be known and may be cited as the Sex Offender Registration Act.  All references to 'the Act' in those sections are to the Sex Offender Registration Act."

[3/]     Petitioner's direct appeal was consolidated with his Petition for a Writ of Habeas Corpus in the California Court of Appeal.

10cv1095

1        On May 20, 2010, Petitioner filed a Petition for Writ of

2   Habeas Corpus in this Court.  On May 24, 2010, this Court ordered a

3   response to the Petition. On September 10, 2010, Respondent answered

4   the Petition.

5        IV.   <u>SCOPE OF REVIEW</u>

6        This Petition is governed by Title 28, United States Code, §

7   2254, as amended by the 1996 Antiterrorism and Effective Death

8   Penalty Act ("AEDPA"). Section 2254(a) sets forth the following

9   scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or
> a district court shall entertain an application for a writ
> of habeas corpus in behalf of a person in custody pursuant
> to the judgment of a State court only on the ground that
> he is in custody in violation of the Constitution or laws
> or treatises of the United States.  28 U.S.C. § 2254(a).

As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim-
>
> (1) resulted in a decision that was <u>contrary to</u>, or
> involved an <u>unreasonable application</u> of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an
> <u>unreasonable determination</u> of the facts in light of
> the evidence presented in the State court proceeding.
> 28  U.S.C.  §  2245(d)(1)-(2)  (emphasis  added).

23       "AEDPA establishes a 'highly deferential standard for

24   evaluating state-court rulings, which demands that state-court

25   decisions be given the benefit of the doubt.'" <u>Womack v. Del Papa</u>,

26   497 F.3d 998, 1001 (9th Cir. 2007) [quoting <u>Woodford v. Viscotti</u>,

27   537 U.S. 19, 24 (2002)].  To obtain federal habeas relief, Peti-

28   tioner must satisfy either § 2254(d)(1) or § 2254(d)(2). <u>See</u>

10cv1095

1    <u>Williams v. Taylor</u>, 529 U.S. 362, 403 (2000).  The Supreme Court has

2    ruled that the "contrary to" clause of § 2254(d)(1) permits a grant

3    of habeas relief "if the state court arrives at a conclusion

4    opposite to that reached by this Court on a question of law or if

5    the state court decides a case differently than this Court has on a

6    set of materially indistinguishable facts." <u>Id.</u> at 412-13.  The

7    Supreme Court has also interpreted the "unreasonable application"

8    clause of § 2254(d)(1) to allow a grant of "the writ if the state

9    court identifies the correct governing legal principle from this

10   Court's decisions but unreasonably applies that principle to the

11   facts of the prisoner's case."  <u>Id.</u> at 413. The Supreme Court has

12   clarified that under § 2254(d)(2), even an erroneous or incorrect

13   application of clearly established federal law does not support a

14   habeas grant, unless the state court's application was "objectively

15   unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003).

16        When there is no reasoned decision from the state's highest

17   court, the Court "looks through" to the underlying appellate court

18   decision.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 805-06 (1991).  If

19   the dispositive state court order does not "furnish a basis for its

20   reasoning," federal habeas courts must conduct an independent review

21   of the record to determine whether the state court's decision is

22   contrary to, or an unreasonable application of, clearly established

23   Supreme Court law.  <u>See</u> <u>Delgado v. Lewis</u>, 223 F.3d 976, 981-82 (9th

24   Cir. 2000) (overruled on other grounds by <u>Lockyer</u>, 538 U.S. at 75-

25   76).  A state court need not cite Supreme Court precedent when

26   resolving a habeas corpus claim.  <u>Early v. Packer</u>, 537 U.S. 3, 8

27   (2002).  Absent citations to Supreme Court precedent, habeas relief

28

10cv1095

1   is not merited if the state court decision neither contradicts the

2   reasoning nor the result of Supreme Court rulings.   <u>Id.</u>

3       V.   <u>DISCUSSION</u>

4       Petitioner claims that habeas relief is proper based on the

5   following five grounds: (1) the court's refusal to allow photographs

6   into evidence at trial violated his right to due process; (2) his

7   trial counsel's failure to introduce a nanny cam video into evidence

8   violated his right to effective assistance of counsel; (3) his trial

9   counsel's failure to introduce testimony of character and conduct

10  witnesses violated his right to effective assistance of counsel; (4)

11  Section 136.1(b)(1) is either constitutionally flawed or the trial

12  court's instruction was error, and his trial counsel's failure to

13  request an appropriate jury instruction violated his right to

14  effective assistance of counsel; and (5) his due process rights were

15  violated based on insufficient evidence to support a violation of

16  Section 136.1(b)(1).   (Petition at 2.)

17      A.  <u>Petitioner's Due Process Rights Were Not Violated By the</u>

18          <u>Limitation of Photographs Because the Photographs Were</u>
            <u>Not Relevant to the Attempt to Dissuade a Witness</u>

19          <u>Conviction</u>

20      Petitioner contends that his due process rights were violated

21  because the court only allowed into evidence a portion of the 4,021

22  photographs that he took of Christina.  (Petition at 24.)  Specifi-

23  cally, Petitioner claims that all of the photographs were the

24  "center of the bulls eye" of his defense and that they provided the

25  foundation for his reasonable belief that Christina consented to his

26  sexual touching.   (Petition at 24.)  Respondent argues that the

27  photographic evidence is "weak, if not entirely irrelevant" to

28  Petitioner's conviction for attempting to dissuade a witness.

    (Answer at 9.)

10cv1095

1    In the California Court of Appeal, Petitioner challenged the
2    trial court's limitation on the number of photographs of Christina
3    that could be admitted into evidence. The California Court of Appeal
4    agreed with Petitioner that the photographs were relevant to prove
5    Christina's consent as a defense to the sexual battery charge.
6    Therefore, the appellate court reversed Petitioner's conviction on
7    count one, sexual battery. However, the Court of Appeal denied
8    Petitioner's appeal from his conviction on count two, attempting to
9    dissuade a witness. He then filed a Petition for Review in the
10   California Supreme Court which denied his Petition without comment.
11   (Respondent's Lodgment No. 9.)   The last reasoned state decision
12   which addressed the merits of the claim is the California Court of
13   Appeal's opinion affirming Petitioner's conviction for attempting to
14   dissuade a witness. (Respondent's Lodgment No. 7.) It is to that
15   decision this Court must direct its analysis. <u>Ylst</u>, 501 U.S. at 805-
16   06.

17   "In conducting habeas review, a federal court is limited to
18   deciding whether a conviction violated the Constitution, laws, or
19   treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68
20   (1991).   As the Supreme Court noted in <u>Dowling</u>, "the category of
21   infractions that violate 'fundamental fairness' is a very narrow
22   one."   <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990). The
23   Supreme Court reiterated in <u>Dowling</u>, when determining whether a due
24   process violation has occurred, courts "are to determine only
25   whether the action complained of . . . violates those fundamental
26   conceptions of justice which lie at the base of our civil and
27   political institutions, and which define the community's sense of
28   fair play and decency." <u>Dowling</u>, 493 U.S. at 353.

10cv1095

1    Petitioner claims that because the jury did not see all 4,021

2    photographs, it was not able to fully evaluate whether his act of

3    writing Christina the email on January 9, 2007 was conduct pro-

4    scribed under Section 136.1(b)(1), which prohibits attempts to

5    dissuade a victim or witness from reporting a crime to the law

6    enforcement authorities. (Petition at 25.) To support this argument,

7    Petitioner contends that if the jury had been shown all of the

8    photographs that he took of Christina during the photo shoot, it

9    would have concluded from her demeanor that there was no crime, and

10   therefore her report to the police was improper and his email was

11   simply urging her to withdraw a false report. (Petition at 25.)

12       In response to Petitioner's challenge to the sexual battery

13   conviction, the California Court of Appeal determined that the trial

14   court had "violated [Petitioner's] right to present a defense and

15   abused its discretion under California Evidence Code Section 352 by

16   unreasonably limiting the number of photographs presented to the

17   jury." (Respondent's Lodgment No. 7 at 10.)  The appellate court

18   reasoned that a defendant's reasonable and good faith belief that a

19   victim voluntarily consented to an alleged criminal act can be a

20   defense to a sexual offense charge. [Respondent's Lodgment No. 7 at

21   10); citing People v. Mayberry, 15 Cal.3d 143, 155 (1975.)] It was

22   undisputed that Christina did not give express verbal consent to

23   Petitioner to lick her vagina.  Therefore, the appellate court

24   determined that Petitioner was entitled to present all relevant

25   evidence of significant probative value that would tend to prove

26   that Christina engaged in nonverbal consent. (Respondent's Lodgment

27   No. 7 at 22.)  The appellate court explained that evidence related

28   to nonverbal consent is relevant to Petitioner's claim that he had

10cv1095

1   a good faith mistaken belief that she consented. (Respondent's
2   Lodgment No. 7 at 22.) For these reasons, the appellate court
3   concluded that Petitioner's inability to present all 4,021 photo-
4   graphs was fatal to his mistake-of-fact defense to the sexual
5   battery charge. (Respondent's Lodgment No. 7 at 23.) His conviction
6   on that charge was reversed. (Respondent's Lodgment No. 7 at 23.)

7          However, the Court of Appeal denied Petitioner's claim that
8   his due process rights were violated as to the attempt to dissuade
9   a witness conviction. (Respondent's Lodgment No. 7 at 32-33.) The
10  appellate court reasoned,

11      A review of the e-mail, which Christina read to the jury,
        shows that it was far from "benign" or "measured." In it,
12      [Petitioner] warned her she should instruct Detective Metz
        to "back off" if she wanted to keep "[her] graphic
13      photographs" private. [Petitioner] expressly threatened in
        the e-mail to "make public" those sexually explicit
14      photographs for "the world to see." From this evidence,
        any jury could reasonably find that [Petitioner] attempted
15      to dissuade Christina from reporting a crime in violation
        of [S]ection 136.1(b)(1).

16
17  (Respondent's Lodgment No. 7 at 31.)

18         This Court agrees with the Court of Appeal. The Constitution
19  permits judges to exclude evidence that is repetitive, only
20  marginally relevant, or poses an undue risk of harassment or
21  prejudice. Holmes v. South Carolina, 547 U.S. 319, 326 (2006). The
22  Court of Appeal reasoned that all of the photographs were direct
23  evidence of Christina's demeanor, and that her demeanor was critical
24  to Petitioner's mistake-of-fact defense to the sexual battery
25  charge. (Respondent's Lodgment No. 7 at 22-23.) Therefore,
26  Petitioner was entitled to present all 4,021 photographs because
27  they were relevant to that charge. On the other hand, the photo-
28  graphs were irrelevant, and certainly not critical, to Petitioner's
    defense against the attempt to dissuade a witness charge. Chris-

10cv1095

tina's demeanor during the photo shoot is completely irrelevant to his attempt to dissuade her from continuing her report of the incident to law enforcement authorities.

Section 136.1(b)(1) reads:

> Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: (1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge.

Clearly, viewing all 4,021 photographs that Petitioner took of Christina would not assist the jury in making a determination as to whether Petitioner attempted to dissuade her from reporting the incident. The relevant evidence for his attempt to dissuade a witness charge was the email that Petitioner wrote to Christina on January 9, 2007, urging her to call Detective Metz to tell him to back off. The only limited relevance that the photographs possibly may have had to the attempt to dissuade a witness charge is as Petitioner stated in his email that Christina would need to call off the detective if she wanted to keep her graphic photographs private. But the jury was shown approximately 800 photographs of Christina from the photo shoot in the form of a slide show, along with 10 other still photographs. (Respondent's Lodgment No. 2, Rptr. Tr. App. Vol. 7 at 1597-1598.) There was absolutely no need for the jury to see all 4,021 photographs in order to determine whether Petitioner's email was an attempt to get her to call Detective Metz to try to stop the sexual battery complaint from proceeding.

Petitioner asserts that the only evidence presented in support of the attempt to dissuade a witness charge was the email that he

10cv1095

wrote to Christina on January 9, 2007. (Petition at 12.) He fails to
acknowledge, however, that the email is the only evidence that was
needed to support a conviction for count two. The jury was presented
with the email, which Petitioner sent to Christina shortly after he
learned that she had filed a sexual battery complaint against him
with the San Diego Police Department. During her testimony,
Christina read Petitioner's email to the jury. Petitioner's email
read, in part:

> Do you realize that you will be facing a very costly civil
> suit from me if you continue with your criminal claims?
> Do you want the courts to make public and the world to see
> your graphic photos or would you rather have them kept
> private? You need to call Detective Metz, (provided
> Detective Metz's phone number), IMMEDIATELY and tell him
> to back off and that you've had a change of heart. . .
> Lawsuits are extremely costly, stressful and very unpleas-
> ant, lots of sleepless nights, etc. Please reconsider.

(Respondent's Lodgment No. 2, Rptr. Tr. App. Vol. 3 at 699-700.)

Christina also testified that she felt threatened and scared
after receiving Petitioner's email. (Respondent's Lodgment No. 2,
Rptr. Tr. App. Vol. 3 at 700, 704.)

There is no support for Petitioner's claim that the outcome
of count two would have been any different if the jury had seen all
4,021 photographs, rather than the over 800 photographs that were
presented. Although he did succeed in showing that all of the
photographs were necessary for his mistake-of-fact defense as to the
sexual battery charge, he is unable to demonstrate that they are in
any way relevant to his conviction for attempting to dissuade a
witness. It is clear by the language of Petitioner's email that he
was trying to dissuade Christina from continuing her complaint to
the San Diego Police Department. The jury heard the words that
Petitioner wrote to Christina, where he provided Detective Metz's

10cv1095

1    phone number and expressly urged her to call the detective and tell

2    him to back off. The jury also heard Christina testify that she felt

3    threatened by the email. Since the photographs were irrelevant to

4    count two, there was no need to present the over 3,000 additional

5    photographs in order to put Petitioner's words into context.

6         Petitioner also contends that the Court of Appeal did not

7    address his argument that the trial court's limitation of photo-

8    graphs adversely impacted on the adjudication of count two.

9    (Petition at 27.) This claim is also without merit.  The Court of

10   Appeal clearly stated,

11       In support of his appeal, [Petitioner] also claims the
         court's failure to admit all of the photographs into
12       evidence, his trial counsel's failure to introduce the
         nanny cam videotape, and his trial counsel's failure to
13       present the testimony of the four female character
         witnesses impacted directly on the issue of count 2 and
14       acted to deny him a fair trial.  We reject this claim of
         cumulative error.
15
     (Respondent's Lodgment No. 7 at 30.)
16
17        The appellate court then provided support for its conclusion,

18   noting that, from the email to Christina, "any jury could reasonably

19   find that [Petitioner] attempted to dissuade Christina from

20   reporting a crime in violation of [S]ection 136.1(b)(1)." (Respon-

21   dent's Lodgment No. 7 at 31.)

22        Therefore, it is entirely reasonable that the jury found the

23   dissuading a witness charge to be true based on the email that

24   Petitioner wrote to Christina, and Christina's testimony that she

25   felt threatened and scared after receiving the email.  The photo-

26   graphs of Christina had no relevance to the charge of attempting to

27   dissuade a witness.  Accordingly, Petitioner's right to due process

28   was not violated by the trial court's decision not to admit all

     4,021 photographs of Christina into evidence.

10cv1095

The appellate court's denial of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Therefore, this Court RECOMMENDS that Petitioner's claim for habeas relief in this regard be DENIED.

B. <u>Petitioner's Constitutional Right to Effective Assistance of Counsel Was Not Violated Because Trial Counsel Made a Rational Tactical Decision To Not Introduce The Nanny Cam Video Into Evidence</u>

Petitioner claims that his constitutional right to effective assistance of counsel was violated because his trial counsel did not introduce a nanny cam video into evidence. (Petition at 20.) Specifically, Petitioner asserts that while the nanny cam video did not seem necessary at the beginning of his trial, "[b]y the end of the defense case, it should have been very clear" that the video should have been introduced. (Petition at 28.) Respondent argues that Petitioner's trial counsel had valid tactical reasons for making the decision not to offer the video into evidence, and therefore the conduct did not constitute ineffective assistance of counsel. (Answer at 12.)

In the California Court of Appeal, Petitioner challenged the effectiveness of his trial counsel because of the decision not to admit the nanny cam video into evidence. The California Court of Appeal denied Petitioner's appeal. He then filed a Petition for Review in the California Supreme Court which denied his Petition without comment. (Respondent's Lodgment No. 9.) The last reasoned state decision which addressed the merits of the claim is the California Court of Appeal's opinion affirming Petitioner's conviction on count two. (Respondent's Lodgment No. 7.) It is to that decision this Court must direct its analysis. <u>Ylst</u>, 501 U.S. at 805-06.

10cv1095

1     The clearly established United States Supreme Court law
2  governing ineffective assistance of counsel claims is <u>Strickland v.</u>
3  <u>Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Baylor v. Estelle</u>, 94 F.3d
4  1321, 1323 (9th Cir. 1996). In a petition for writ of habeas corpus
5  alleging ineffective assistance of counsel, the Court must consider
6  two factors.  <u>Strickland</u>, 466 U.S. at 687. First, the petitioner
7  must show that counsel's performance was deficient. <u>Id.</u> Deficient
8  performance requires a showing that counsel made errors so serious
9  that he or she was not functioning as the "counsel" guaranteed by
10 the Sixth Amendment. <u>Id.</u> The petitioner must show that counsel's
11 representation fell below an objective standard of reasonableness,
12 and must identify counsel's alleged acts or omissions that were not
13 the result of reasonable professional judgment considering the
14 circumstances. <u>Id.</u> at 688; <u>United State v. Quintero-Barraza</u>, 78 F.3d
15 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's perfor-
16 mance is highly deferential. <u>Strickland</u>, 466 U.S. at 689. A court
17 indulges a strong presumption that counsel's conduct falls within
18 the wide range of reasonable professional assistance. <u>Id.</u> at 687.

19     Second, the petitioner must demonstrate that "there is a
20 reasonable probability that, but for counsel's unprofessional
21 errors, the result . . . would have been different." <u>Id.</u> at 694.
22 Petitioner must show that counsel's errors were so egregious as to
23 deprive defendant of a fair trial, one whose result is unreliable.
24 <u>Id.</u> at 687.  The Court must evaluate whether the entire trial was
25 fundamentally unfair or unreliable because of counsel's ineffective-
26 ness. <u>Id.</u>, <u>Quintero-Barraza</u>, 78 F.3d at 1348.

27     A court need not determine whether counsel's performance was
28 deficient before examining the prejudice suffered by the petitioner

10cv1095

as a result of the alleged deficiencies. <u>Strickland</u>, 466 U.S. at 697.  The court need not address both prongs if a petitioner fails to make a sufficient showing of either one. <u>Id.</u> at 697.

"In a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court. . ." <u>Id.</u> at 698.  Instead, "it is a mixed question of law and fact." <u>Id.</u> [citing <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 342 (1980)]. Federal habeas courts must defer to "state court findings of fact made in the course of deciding an ineffectiveness claim." <u>Strickland</u>, 466 U.S. at 698. Because "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact," Section 2254(d)(1)'s "unreasonable application of" clause applies. <u>Id.</u>; <u>see</u> <u>Moore v. Calderon</u>, 108 F.3d 261, 265 (9th Cir. 1997).

Petitioner argues that he felt "there would have been little risk of a negative jury reaction" to the nanny cam video. (Petition at 27-28.)  He claims that "the tape carries with it enormous value in helping the jury see what happened." (Petition at 28.)  He further asserts that, because the whole issue at trial was whether Petitioner's belief that Christina consented was reasonable "considering all the events leading up to the licking, . . . the video could have been extremely valuable." (Petition at 28.)

The Court of Appeal concluded that Petitioner had failed to demonstrate that there could have been no rational tactical purpose for his counsel's deliberate decision to not present the video. (Respondent's Lodgment No. 7 at 29.)  Addressing the issue of trial counsel's performance, the Court of Appeal noted,

> Had the defense presented the nanny cam video at trial,
> the jury would likely have found that [Petitioner] falsely

10cv1095

1   told Christina during the recorded telephone conversation
    that "the video record would show [her] having fun for six
2   minutes" when he orally copulated her.  The jury would
    also have learned that [Petitioner] gave shots of tequila
3   to Christina when she was naked and had then squirted
    something down her throat during the photo shoot.  The
4   likelihood that the showing of the video would have been
    prejudicial to the defense is manifest.  In sum, we reject
5   [Petitioner's] contention that his trial counsel provided
    ineffective assistance by failing to introduce the nanny
6   cam videotape into evidence.

7   (Respondent's Lodgment No. 7 at 29.)

8       The Court of Appeal also determined that Petitioner was

9   unable to meet the prejudice prong of <u>Strickland</u>. (Respondent's

10  Lodgment No. 7 at 28.) The Court of Appeal noted that there was not

11  a reasonable probability that the verdict as to Count 2 would have

12  been more favorable to him absent the alleged ineffective assistance

13  of counsel. (Respondent's Lodgment No. 7 at 28.)

14      This Court agrees with the Court of Appeal. Like the

15  limitation of photographs in Claim One, the nanny cam video is

16  clearly irrelevant to Petitioner's charge for attempting to dissuade

17  a witness. The jury was shown over 800 photographs of Christina from

18  the photo shoot. (Respondent's Lodgment No. 2, Rptr. Tr. App. Vol.

19  7 at 1597-1598.) Again, the relevant evidence for Petitioner's

20  attempt to dissuade a witness charge was the January 9, 2007 email

21  that he wrote to Christina, urging her to call Detective Metz and

22  tell him to "back off." There was absolutely no need for the jury to

23  see the nanny cam  video in order to determine whether Petitioner's

24  email was an attempt to get her to call Detective Metz to try to

25  stop the complaint from proceeding.

26      Petitioner claims that, if the nanny cam video had been

27  presented to the jury, none of the prosecution's attacks on his

28  character during closing argument, nor the evidence brought out

10cv1095

1    during testimony, would have been available, and that the video

2    would have shown that he was not a liar. (Petition at 28.) To

3    support his claim, Petitioner urges that the nanny cam would have

4    provided the jury with the best and strongest evidence to show the

5    "'first date' flirtatious interaction" between himself and Chris-

6    tina. (Petition at 29.) He also asserts that he wanted to introduce

7    the nanny cam video to show the jury what he saw before the

8    incident. (Respondent's Lodgment No. 3 at 49.)

9         Similar to the request to introduce all 4,021 photographs of

10   the photo shoot, introduction of the nanny cam video would have been

11   cumulative and unnecessary to Petitioner's defense to the attempt to

12   dissuade a witness charge. The jury was presented with plenty of

13   evidence of Christina's behavior during the photo shoot. Christina

14   testified about her demeanor prior to the incident with Petitioner.

15   (Respondent's Lodgment No. 2, Rptr. Tr. App. Vol. 4 at 960.) She

16   told the jury that she was uninhibited, having fun, touching her

17   private parts, and posing with a banana. (Respondent's Lodgment No.

18   2, Rptr. Tr. App. Volume 4 at 906, 911.) Additionally, the jury was

19   shown over 800 photographs in a slide show and 10 still photographs

20   of the photo shoot, both before and after the licking incident.

21   (Respondent's Lodgment No. 2, Rptr. Tr. App. Vol. 3 at 726.)

22        Introduction of the video would also likely have been

23   prejudicial to Petitioner. He secretly videotaped Christina during

24   the photo shoot in his house. Although she was posing for photo-

25   graphs, she was unaware that she was being videotaped. That

26   information may have caused concern to the jury. Further, the video

27   likely would not have helped support Petitioner's contention that he

28   did not lie to Christina. To the contrary, as the Court of Appeal

10cv1095

1  pointed out, the video would have shown the jury that Petitioner was
2  untruthful with Christina when he told her that the video did
3  capture the licking incident. Instead, the video cut off before the
4  incident occurred.

5      Following his conviction, Petitioner filed a motion for a new
6  trial and argued that his trial counsel's performance had been
7  deficient due to the failure to introduce the video into evidence.
8  (Respondent's Lodgment No. 4. at 24.) At the hearing, Petitioner
9  called his trial counsel to testify in support of the motion.
10 (Respondent's Lodgment No. 2, Rptr. Tr. App. Vol. 7 at 1586.) His
11 trial counsel testified as to his reasons for deciding not to
12 present the video to the jury. (Respondent's Lodgment No. 2, Rptr.
13 Tr. App. Vol. 7 at 1586.) He testified that he had watched the video
14 before trial, and noted that it depicted Petitioner providing
15 Christina with tequila shots and squirting lime juice down her
16 throat while she was naked. (Respondent's Lodgment No. 2, Rptr. Tr.
17 App. Vol. 7 at 1589-1590.) He also testified that it appeared that
18 Christina did not know that she was being videotaped. (Respondent's
19 Lodgment No. 2, Rptr. Tr. App. Vol. 7 at 1590.) After being
20 presented with the evidence of counsel's reasons for keeping the
21 video from the jury, the trial court denied Petitioner's motion for
22 a new trial. (Respondent's Lodgment No. 2, Rptr. Tr. App. Vol. 7 at
23 1614, 1617.)

24     Trial counsel's performance is not deficient unless it falls
25 below an objective standard of reasonableness. Strickland, 466 U.S.
26 at 688. Here, trial counsel made a rational tactical decision to not
27 show the video to the jury. Counsel had valid reasons for making the
28 determination that it was possible that the jury would not react

10cv1095

1   well to the fact that Petitioner secretly videotaped Christina while
2   she was naked at his house. Therefore, Petitioner has failed to show
3   that his trial counsel's performance constituted deficient perfor-
4   mance under the first prong of <u>Strickland</u>.

5        Petitioner also argues that his trial counsel's decision not
6   to admit the nanny cam video into evidence "created distinct
7   prejudice" to him as it relates to the attempt to dissuade a witness
8   charge. (Petition at 29.) As in Claim One, he again asserts that the
9   jury evaluated the email to Christina as to whether or not the
10  police report was false. (Petition at 29.) He claims, "[H]ad [the
11  jury] been shown the video it would have concluded that there was no
12  crime, that the report of it to the police was improper," and that
13  his email was really urging her to withdraw a false report.
14  (Petition at 29-30.) Petitioner's counsel reasoned that the video
15  would likely prejudice Petitioner, rather than assist with his
16  defense. Therefore, he had a rational tactical purpose for not
17  presenting the video to the jury. Moreover, it is clear from the
18  record why his counsel could have thought the video may not only be
19  unhelpful, but also prejudicial to Petitioner. Therefore, he made
20  the rational, tactical determination to keep the video from the
21  jury. The Court, having determined that Petitioner received
22  effective assistance of counsel, the Court need not reach the issue
23  of prejudice. <u>Strickland</u>, 466 U.S. at 694, 697.

24       For these reasons, trial counsel's decision did not fall
25  below an objective standard of reasonableness, and Petitioner did
26  not receive ineffective assistance of counsel. The appellate court's
27  denial of Petitioner's claim was neither contrary to, nor an
28  unreasonable application of, clearly established federal law.

10cv1095

1  Therefore, the Court RECOMMENDS that Petitioner's claim for habeas

2  relief in this regard be DENIED.

3       C.   <u>Petitioner's Constitutional Right to Effective Assis-
            tance of Counsel Was Not Violated Because Trial Coun-</u>

4       <u>sel's Decision Not to Introduce the Testimony of
         Character and Conduct Witnesses Into Evidence Was a</u>

5       <u>Rational Tactical Decision</u>

6       Petitioner contends that "trial counsel has a duty to

7  investigate all defenses and in this case it would have yielded

8  important information." (Petition at 30.) Specifically, Petitioner

9  claims that there were a number of women that he had previously

10 photographed in his home who were available to testify that his

11 regular course of conduct was completely appropriate. (Petition at

12 30.) Respondent argues that Petitioner was unable to meet his burden

13 under <u>Strickland</u> of establishing that there could be no rational

14 tactical purpose for his trial counsel's decision. (Answer at 11.)

15      In the California Court of Appeal, Petitioner challenged his

16 counsel's effective assistance for failing to introduce certain

17 character witnesses at trial. The California Court of Appeal denied

18 Petitioner's appeal. He then filed a Petition for Review in the

19 California Supreme Court, which denied his Petition without comment.

20 (Respondent's Lodgment No. 9.) The last reasoned state decision

21 which addressed the merits of the claim is the California Court of

22 Appeal's opinion affirming Petitioner's conviction on count two.

23 (Respondent's Lodgment No. 7.) It is to that decision this Court

24 must direct its analysis. <u>Ylst</u>, 501 U.S. at 805-806.

25      Petitioner claims that his trial counsel had a duty to

26 investigate all defenses, and therefore he should have introduced

27 three women who would testify that Petitioner had previously

28 photographed them in the nude or partially nude, and also his former

10cv1095

female personal assistant. (Petition at 30-31.) He asserted that he never forced himself on these women, that he never made improper advances, and he wanted the women to testify as to his character. (Petition at 30.) Petitioner contends that these witnesses could have supported his case and countered the prosecution's argument that he was manipulative in general, and specifically towards Christina, because he never forced himself on these other women or made improper advances. (Petition at 30.)

The Court of Appeal denied this claim, stating,

> Given the state of the evidence at trial - including Christina's testimony that during the "professional" photo shoot [Petitioner] asked her, "Does the photographer get some of that?," and his own recorded statement that her act of masturbation, which Christina said was only posing, constituted "consent" for his act of vaginally licking her - [Petitioner] has failed to demonstrate that his trial counsel had no rational tactical purpose for his decision to not call the women as character witnesses. (People v. Zapien, 4 Cal.4th 929,980 (1993).) A reasonably competent defense attorney may have had a valid tactical reason for not opening up the subject of [Petitioner's] character and his history of using the Internet to persuade young women to come to his home studio to participate in sexually provocative nude photography.

(Respondent's Lodgment No. 7 at 29-30.)

This Court agrees with the Court of Appeal. Similar to Petitioner's claim, the defendant in Strickland asserted ineffective assistance of counsel, claiming, among other things, that his counsel had failed to investigate and present character witnesses. Strickland, 466 U.S. at 675. The U.S. Supreme Court concluded that "[C]ounsel's strategy choice was well within the range of profes- sionally reasonable judgment, and the decision not to seek more character or psychological evidence than was in hand was likewise reasonable." Strickland, 466 U.S. at 699.

10cv1095

1    Here, Petitioner claims that the character witnesses would
2  have testified that they were photographed in Petitioner's home like
3  Christina had been, but Petitioner never touched them in a sexual
4  way. (Petition at 31.) However, it is undisputed that Petitioner
5  licked Christina. Therefore, it is reasonable for Petitioner's
6  counsel to have believed that there was no benefit to Petitioner in
7  presenting the women to testify. Further, Petitioner's counsel may
8  also have determined that it would have been prejudicial to
9  Petitioner to introduce the testimony of several other women that he
10 had photographed naked in his home. Moreover, Plaintiff would have
11 opened the door to the prosecution's rebuttal evidence of Peti-
12 tioner's character, if any existed. Therefore, counsel's performance
13 was within the wide range of reasonable professional assistance and
14 did not fall below the objective standard of reasonableness required
15 by <u>Strickland</u>. Having determined that Petitioner received effective
16 assistance of counsel, the Court need not reach the issue of
17 prejudice. <u>Id.</u> at 694, 697.

18    The appellate court's denial of Petitioner's claim was
19 neither contrary to, nor an unreasonable application of, clearly
20 established federal law. Therefore, the Court RECOMMENDS that
21 Petitioner's claim for habeas relief in this regard be DENIED.

22

23

24    D.   <u>California Penal Code Section 136.1(b)(1) is Not</u>
         <u>Constitutionally Flawed, the Jury Instruction was Not</u>
25       <u>Error, and Trial Counsel's Failure to Request an</u>
         <u>Appropriate Jury Instruction Did Not Violate Peti-</u>
26       <u>tioner's Constitutional Right to Effective Assistance of</u>
         <u>Counsel</u>

27

28    Petitioner asserts that it is a fundamental principle in
   criminal jurisprudence that conviction of a crime requires proof of

                                                    10cv1095

both the *actus reas* and the *mens rea* of the crime. (Petition at 32.) Specifically, he argues that California Penal Code Section 136.1(b)(1) is a crime without the requirement of *mens rea* as applied and instructed at his trial. (Petition at 32.) Respondent contends that the Court of Appeal specifically determined that Section 136.1(b)(1) does include a *mens rea* element. (Answer at 15.)

In the California Court of Appeal, Petitioner challenged the constitutionality of Section 136.1(b)(1), along with the trial court's jury instruction, and the effectiveness of his trial counsel. The California Court of Appeal denied Petitioner's appeal. He then filed a Petition for Review in the California Supreme Court, which denied his Petition without comment. (Respondent's Lodgment No. 9.) The last reasoned state decision which addressed the merits of the claim is the California Court of Appeal's opinion affirming Petitioner's conviction on count two. (Respondent's Lodgment No. 7.) It is to that decision this Court must direct its analysis. Ylst, 501 U.S. at 805-806.

Challenge to a jury instruction solely as an error under state law does not state a claim cognizable in a federal habeas corpus action. Estelle, 502 U.S. at 71-72. To obtain federal collateral relief for errors in a jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Id. at 72. The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. Where "no erroneous instruction was given[,]" a petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than

10cv1095

1  a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155
2  (1977).

3       In apparent support of his claim that Section 136.1(b)(1) is
4  constitutionally flawed because it does not have a *mens rea*
5  requirement, Petitioner contends that the only "intent" included in
6  the statute is the specific intent to attempt to dissuade a witness
7  from reporting a crime. (Petition at 34.) He claims that the statute
8  makes no distinction between acting improperly or maliciously to
9  attempt to dissuade a witness from reporting a crime, versus acting
10 legally and properly to attempt to dissuade a witness from reporting
11 a crime. (Petition at 34.) He argues that the statute does not
12 require that the crime about to be reported be legitimate, perceived
13 to be legitimate, known to the reporter as legitimate, or known to
14 the dissuader as being legitimate. (Petition at 34.) He asserts that
15 the statute forbids the act of dissuading a witness from ALL reports
16 of a crime, even if the report is mistakenly or knowingly false.
17 (Petition at 34.) Petitioner's arguments are unavailing.

18       The appellate court noted that the trial court instructed the
19 jury under CALCRIM No. 2622 as follows with regard to count two:

20       The defendant is charged in Count 2 with intimidating a
         witness.  To prove that the defendant is guilty of this
21       crime, the People must prove that: 1, The defendant tried
         to prevent or discourage [Christina] from cooperating or
22       providing information so that a complaint could be sought
         and prosecuted, and from helping to prosecute that action;
23       2, [Christina] was a witness or a crime victim; and 3, The
         defendant *knew* he was trying to prevent or discourage
24       [Christina] from causing prosecution and *intended* to do
         so.
25
   (emphasis added.)
26
         As used here, a witness means someone, or a person the
27
   defendant reasonably believed to be someone, who has reported a
28
   crime to the police. A person is a victim if there is reason to

                                   29

                                                      10cv1095

1  believe that a federal or state crime is being, or has been,
2  committed or attempted against him or her.

3       The appellate court concluded that Section 136.1(b)(1) does
4  in fact have a *mens rea* requirement. Specifically, Section
5  136.1(b)(1) requires specific intent to dissuade the victim from
6  reporting her victimization to law enforcement authorities. Cal.
7  Penal Code § 136.1(b)(1).

8       This Court agrees with the Court of Appeal. The crime of
9  attempting to prevent and dissuade a victim of a crime from making
10  a report of that victimization to a peace officer in violation of
11  Section 136.1(b)(1) clearly does have a *mens rea* requirement. It
12  requires the specific intent to dissuade the victim from reporting
13  her victimization to the authorities. Cal. Penal Code § 136.1(b)(1).
14  The *mens rea* element is satisfied by the requirement that the
15  Petitioner knew that he was attempting to dissuade, and that he
16  intended to attempt or dissuade the victim. Therefore, the statute
17  is not unconstitutionally flawed.

18       A review of the instructions that the jury received regarding
19  count two shows that the court, using standard Judicial Council of
20  California Criminal Jury Instructions (2006-2007) (CALCRIM),
21  properly instructed the jury as to the elements of count two. The
22  trial court instructed that in order to convict Petitioner of
23  unlawfully attempting to prevent and dissuade Christina as a victim
24  and witness of a crime from making a report of her victimization to
25  a peace officer or law enforcement agency, the jury was required to
26  find beyond a reasonable doubt that at the time of his alleged
27  criminal act, Petitioner *knew* he was trying to prevent or discourage
28  Christina from causing prosecution, and that he *intended* to do so.

10cv1095

1  As the Court of Appeal asserted, "[w]ith respect to the mens rea
2  element of the offense charged in count two, the constitution
3  requires nothing further." (Respondent's Lodgment No. 7 at 34-35.)
4  Here, the evidence shows that Petitioner knew that he was attempting
5  to dissuade Christina from continuing with her report to the police
6  when he sent her the January 9, 2007 email.

7      Petitioner also claims ineffective assistance of counsel for
8  failure to request an appropriate jury instruction. (Petition at
9  38.)  Since Section 136.1(b)(1) does contain a *mens rea* element, and
10  the jury was properly instructed, Petitioner's claim of ineffective
11  assistance of counsel is also without merit. Trial counsel's
12  performance did not fall below the objective standard of reasonable-
13  ness required by Strickland for failing to object to a proper jury
14  instruction. The appellate court's denial of Petitioner's claim was
15  neither contrary to, nor an unreasonable application of, clearly
16  established federal law.  Therefore, the Court RECOMMENDS that
17  Petitioner's claim for habeas relief in this regard be DENIED.

18

19

20

21      E.  Petitioner's Due Process Rights Were Not Violated
            Because There Was Sufficient Evidence To Support His
22          Conviction For Attempting To Dissuade A Witness Under
            Section 136.1(b)(1)
23

24      Petitioner contends that his due process rights were violated
25  because there was insufficient evidence to support his conviction
26  for attempting to dissuade a witness under Section 136.1(b)(1).
    (Petition at 38, 41.) Specifically, Petitioner claims that Section
27  136.1(b)(1) only addresses the act of attempting to stop the initial
28  reporting of a crime, and it does not prohibit attempts to dissuade

10cv1095

1   a witness from withdrawing a report that has already been filed.

2   (Petition at 39.) Respondent asserts that Christina's testimony was

3   sufficient to sustain Petitioner's conviction because it supports a

4   reasonable finding that Petitioner was attempting to pressure her

5   into withdrawing her report to the police that she was the victim of

6   a sex crime. (Answer at 17.)

7          In the California Court of Appeal, Petitioner challenged the

8   sufficiency of the evidence upon which he was convicted. The

9   California Court of Appeal denied Petitioner's appeal. He then filed

10  a Petition for Review in the California Supreme Court which denied

11  his Petition without comment.  (Respondent's Lodgment No. 9.) The

12  last reasoned state decision which addressed the merits of the claim

13  is the California Court of Appeal's opinion affirming Petitioner's

14  conviction on the dissuading a witness count. (Respondent's Lodgment

15  No. 7.)  It is to that decision this Court must direct its analysis.

16  Ylst, 501 U.S. at 805-06.

17         The clearly established federal law regarding sufficiency of

18  the evidence claims in the criminal context is set forth in Jackson

19  v. Virginia, 443 U.S. 307, 319 (1979). In Jackson, the Court held

20  that the Fourteenth Amendment's Due Process Clause is violated, and

21  an applicant is entitled to habeas corpus relief, "if it is found

22  that upon the record evidence adduced at the trial no rational trier

23  of fact could have found proof of guilt beyond a reasonable doubt."

24  Jackson, 443 U.S. at 324. In making this determination, habeas

25  courts must respect the province of the jury to determine the

26  credibility of witnesses, resolve evidentiary conflicts, and draw

27  reasonable inferences from proven facts by assuming the jury

28  resolved all conflicts in a manner that supports the verdict.  Id.

10cv1095

1    at 319. Once a state court fact finder has found a defendant guilty,

2    federal habeas courts must consider the evidence "in the light most

3    favorable to the prosecution." Id. Federal habeas courts must also

4    analyze Jackson claims "with explicit reference to the substantive

5    elements of the criminal offense as defined by state law." Id. at

6    324 n. 16.

7         The Ninth Circuit has stated, "(a)fter AEDPA, we apply the

8    standards of Jackson with an additional layer of deference." Juan H.

9    V. Allen, 408 F.3d 1262, 1275 (9th Cir. 2005). In Allen, the Ninth

10   Circuit first reviewed the standard of review applied by the state

11   appellate court to a sufficiency of the evidence claim, and found

12   that, although the state court did not cite to the relevant federal

13   case law, "such a citation is not required 'so long as neither the

14   reasoning nor the result of the state-court decision contradicts'

15   Supreme Court precedent." Id. at 1274 n. 12 (quoting Early, 537 U.S.

16   at 8.)

17        Viewing the evidence "in the light most favorable to the

18   prosecution," as this Court must, it is clear that sufficient

19   evidence was adduced at trial to support Petitioner's conviction for

20   attempting to dissuade a witness under California law. Jackson, 443

21   U.S. at 319.

22        Petitioner contends that there was insufficient evidence to

23   convict him of the attempt to dissuade a witness charge because

24   Section 136.1(b)(1) is not meant to penalize attempts to dissuade

25   someone to withdraw a charge that has already been filed. (Petition

26   at 39.)  He argues that a crime had already been reported when he

27   warned Christina to drop the charges against him in his January 9,

28   2007 email.  (Petition at 41.) He further claims that attempting to

10cv1095

persuade someone to withdraw a charge "is an entirely different act not covered by [Section 136.1(b)(1)]." (Petition at 39.) Petitioner asserts that, because the prosecution did not have to prove that he was trying to dissuade Christina from actually filing a report, his conviction cannot stand.

The appellate court denied this claim, stating:

> [Petitioner] contends that [S]ection 136.1(b)(1) should be interpreted narrowly as prohibiting 'the act of attempting to stop the *initial* reporting of the crime itself.' He claims 'there is no evidence that [he] attempted to prevent Christina from reporting the occurrence of the crime' and all he did was 'contact Christina once after the report had already been made, and advise her that she made a false report' and that 'he was going to sue her in a civil court, because it was his belief that no crime had occurred.' These contentions are unavailing.

(Respondent's Lodgment No. 7 at 35-36.)

The Court of Appeal determined that Christina's testimony was sufficient evidence to sustain Petitioner's conviction for attempting to dissuade a witness. (Respondent's Lodgment No. 7 at 36.) Christina testified that she received the email from Petitioner on January 9, 2007. (Respondent's Lodgment No. 2, Rptr. Tr. App. Vol. 3 at 698.) He wrote the email after he was contacted by Detective Metz about the licking incident that Christina had reported to the police. (Respondent's Lodgment No. 2, Rptr. Tr. App. Vol. 3 at 699.) Christina read the email out loud during her testimony. (Respondent's Lodgment No. 2, Rptr. Tr. App. Vol. 3 at 699-700.) The jury heard the entire email, including, "Do you realize that you will be facing a very costly civil suit from me if you continue with your claims?" and "Do you want the courts to make public and the world to see your graphic photos or would you rather have them kept private?" (Respondent's Lodgment No. 2, Rptr. Tr. App. Vol. 3 at 699-700.) Petitioner's email also instructed Christina to "call

34

1    Detective Metz IMMEDIATELY and tell him to back off and that you've

2    had a change of heart." (Respondent's Lodgment No. 2, Rptr. Tr. App.

3    Vol. 3 at 700.) He even provided the detective's phone number.

4    (Respondent's Lodgment No. 2, Rptr. Tr. App. Vol. 3 at 700.)

5    Petitioner wrote that if he did not hear from her in response to the

6    email, then he would assume that she was proceeding with her claim,

7    and he would retain an attorney. (Respondent's Lodgment No. 2, Rptr.

8    Tr. App. Vol. 3 at 700.) He added, "Lawsuits are extremely costly,

9    stressful and very unpleasant, lots of sleepless nights, et cetera.

10   Please reconsider." (Respondent's Lodgment No. 2, Rptr. Tr. App.

11   Vol. 3 at 700.) After reading Petitioner's email to the jury,

12   Christina testified that it made her feel threatened and scared.

13   (Respondent's Lodgment No. 2, Rptr. Tr. App. Vol. 3 at 700, 704.)

14       The Court of Appeal concluded,

15       Christina's testimony was sufficient to sustain [Peti-
         tioner's] conviction of count two, as it supports a
16       reasonable finding that [Petitioner] was attempting to
         pressure Christina into *withdrawing* her report to the
17       police that she was the victim of a sex crime. [Peti-
         tioner] ignores the obvious point that a defendant's act
18       of using a threat to persuade a victim or witness to
         withdraw a report she has made to the police is tanta-
19       mount to using a threat to dissuade a victim or witness
         from filing such a report.
20   (Respondent's Lodgment No. 7 at 36.)

21       This Court agrees with the Court of Appeal. Under California

22   law, it is a misdemeanor to "attempt to prevent or dissuade another

23   person who has been the victim of a crime or who is witness to a

24   crime from . . . [m]aking any report of that victimization to any

25   peace officer or state or local law enforcement officer . . . or to

26   any judge." Cal. Penal Code § 136.1(b)(1). A conviction will be

27   upheld so long as the defendant's "words or actions support the

28   inference" that defendant sought to dissuade a victim or potential

10cv1095

1   witness from . . . reporting a crime." <u>People v. Thomas</u>, 83
2   Cal.App.3d 511, 514 (1978).

3         Here, Petitioner relies on <u>People v. Fernandez</u>, 106
4   Cal.App.4th 943 (2003), to support his claim that the act of
5   attempting to dissuade a victim or witness to withdraw her com-
6   plaint is an act that is not covered by Section 136.1(b)(1).
7   (Respondent's Lodgment No. 7 at 36.) However, <u>Fernandez</u> is not on
8   point.  <u>Fernandez</u> did not involve an attempt to dissuade a witness
9   after a complaint had already been filed. Instead, the question in
10  <u>Fernandez</u> was whether an attempt to dissuade a witness from making
11  a "report . . . to any judge" includes an attempt to influence a
12  victim's testimony at a preliminary hearing. <u>Fernandez</u>, 106
13  Cal.App.4th at 945. In <u>Fernandez</u>, the court determined that
14  Section 136.1(b)(1) is not a catchall provision designed to punish
15  efforts to improperly influence a witness. <u>Id.</u> at 948. The
16  <u>Fernandez</u> court found that section 136.1(b)(1) was being used as a
17  catchall provision because the defendant was convicted of attempt-
18  ing to dissuade a witness from testifying, but the statute makes
19  no reference to testimony or courtroom appearances. <u>Id.</u> The court
20  also determined that there is a difference between a "report" and
21  "testimony." <u>Id.</u> at 951. It reasoned that a report may generally
22  be defined as "an account presented," and "[i]n the context of
23  reporting a crime, it generally means notifying the authorities
24  that the crime has occurred and providing information about the
25  offense." <u>Id.</u> at 948. The <u>Fernandez</u> court distinguished "testi-
26  mony" from a "report," reasoning that testimony is more specifi-
27  cally defined as a "declaration by a witness under oath, as that
28  given before a court." <u>Id.</u>     Here, Section 136.1(b)(1) was not

10cv1095

1   used as a catchall provision. Petitioner's behavior is clearly

2   covered by this statute. Although Petitioner's reliance on

3   <u>Fernandez</u> is misplaced, it is clear that the conduct that he was

4   attempting to dissuade falls into the <u>Fernandez</u> definition of a

5   "report." Petitioner's email urged Christina not to provide

6   information about an offense to the authorities.  He was not

7   trying to persuade her not to testify at a preliminary hearing or

8   at trial. Rather, Petitioner asked her to call Detective Metz

9   "immediately" and tell him to "back off."

10       Petitioner also argues that because the Court of Appeal

11   reversed his conviction for sexual battery on the ground that the

12   trial court violated his right to present a defense, the Court of

13   Appeal "essentially inferred that if [Petitioner] had been able to

14   present his full defense, the most probable outcome would have

15   been a jury finding of [Petitioner's] innocence of the crime."

16   (Petition at 41-42.) Petitioner claims that, "[i]t is logical that

17   the conviction for violation of Section 136.1(b)(1) cannot stand

18   if there was no crime to report, as the [S]ection required specif-

19   ically a report of a 'crime.'" (Petition at 42.)

20       Petitioner's argument lacks merit.  His ultimate acquittal

21   of sexual battery is irrelevant and does not relate back to the

22   time when Christina made the initial report of the crime. There is

23   nothing in the record to indicate that Christina did not reason-

24   ably believe that she was a victim of a federal or state crime.

25   She testified that when Petitioner began licking her vagina, she

26   froze, she was scared because she did not know what Petitioner was

27   capable of doing, and that she felt violated. She also testified

28   that she called her sister, best friend, and boyfriend immediately

10cv1095

1   upon leaving Petitioner's house the afternoon of the incident, and

2   that she was hysterical when she made the phone calls, and she

3   told them that she had been "assaulted." She called the police and

4   underwent a Sexual Assault Response Team examination, where her

5   vagina was swabbed for DNA.  The Court of Appeal reversed Peti-

6   tioner's sexual battery conviction because of a limitation of the

7   number of photographs admitted into evidence. However, that does

8   not erase the fact that the evidence shows that Christina felt she

9   had been victimized by Petitioner, and he attempted to dissuade

10  her from continuing with her complaint to the police.

11      In sum, viewing the evidence in the light most favorable to

12  the prosecution, this Court finds that a rational trier of fact

13  could have found sufficient evidence that Petitioner attempted to

14  dissuade Christina from proceeding with her report of the incident

15  in violation of Section 136.1(b)(1). Thus, this Court concludes

16  that the appellate court's denial of this claim was not contrary

17  to, nor an unreasonable application of, clearly established

18  federal law, nor was it an unreasonable determination of the

19  facts.  Therefore, this Court RECOMMENDS that Petitioner's claim

20  for habeas relief in this regard by DENIED.

21      VI.   CONCLUSION AND RECOMMENDATION

22

23      After a review of the record in this matter, the under-

24  signed Magistrate Judge RECOMMENDS that the Petition for Writ of

    Habeas Corpus be DENIED with prejudice. This report and recommen-

25  dation of the undersigned Magistrate Judge is submitted to the

26  United States District Judge assigned to this case, pursuant to

27
    the provision of 28 U.S.C. § 636(b)(1).
28

10cv1095

1    **IT IS ORDERED** that no later than <u>May 31, 2011</u>, any party to

2    this action may file written objections with the Court and serve a

3    copy on all parties. The document should be captioned "Objections

4    to Report and Recommendation."

5    **IT IS FURTHER ORDERED** that any reply to the objections

6    shall be filed with the Court and served on all parties no later

7    than <u>June 15, 2011</u>. The parties are advised that failure to file

8    objections within the specified time may waive the right to raise

9    those objections on appeal of the Court's order.  <u>Martinez v.</u>

10   <u>Ylst</u>, 951 F.2d 1153, 1156 (9th Cir. 1991).

11

12   DATED:  April 29, 2011

13

14   

15   Hon. William V. Gallo
     U.S. Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

10cv1095